Estate of Charles E. Estes, Deceased, Mabel B. Estes and the First National Bank of Montgomery, as Executors of the Estate of Charles E. Estes, Deceased v. Commissioner.
Estate of Charles E. Estes v. Commissioner
Docket No. 13067.
United States Tax Court
1949 Tax Ct. Memo LEXIS 255; 8 T.C.M. (CCH) 174; T.C.M. (RIA) 49041; February 25, 1949
*255 John W. Lapsley, Esq., 100 Church St., Selma, Ala., for the petitioners. Frank M. Thompson, Jr., Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income and victory taxes for Charles E. Estes, deceased, for 1941, 1942, and 1943, in the total amount of $35,298.18, the entire amount of which is in dispute. The issue raised by the pleadings is whether the respondent erred in his determination of the taxable net income of Charles E. Estes for the years involved by including amounts claimed to be the income of Mabel B. Estes from the operations of a partnership doing business as Montgomery Cotton Mills. Findings of Fact Charles E. Estes and Mabel B. Estes were husband and wife residing together in Montgomery, Alabama, during the taxable years involved. They filed their income tax returns with the collector of internal revenue for the district of Alabama. Charles E. Estes died June 6, 1945, and his executors are the petitioners here. For some years prior to 1941, Charles E. Estes was employed at a salary of $275 per month as the local manager of the Selma Manufacturing Company of Montgomery, Alabama. *256 That company was owned by J. F. Ames. Estes had had a number of years of experience as an employee of the cotton mill but had no technical training or experience in the operation of the cotton mill machinery. Estes and his wife were close personal friends of J. F. Ames and his wife, Evelyn H. Ames. After the death of J. F. Ames on January 12, 1941, Mrs. Ames, as executrix of the Ames estate, executed to Mr. Estes an option for 60 days to purchase the cotton mill business in Montgomery for a price of $106,000, of which $62,500 was to be paid in cash and $43,500 was to be paid by the assumption or payment of indebtedness. A recited consideration of $10 was paid for the execution of the option. Neither Estes nor his wife had any substantial, independent means and neither of them was financially able to purchase the mill under the option. Estes proposed to D. H. Morris, Jr., that he (Morris) and Joel E. Johnson, who were partners in a similar business in Geneva, Alabama, known as Bama Cotton Mills, furnish the money to finance the purchase of the cotton mill at Montgomery. After further conferences between Estes and Morris, and after a survey and appraisal had been made of the mill *257 property, a new partnership was formed under the name of Montgomery Cotton Mills to purchase and operate the mill. Bama Cotton Mills furnished the initial investment of about $75,000 to $80,000 as advances to the Montgomery Cotton Mills to finance the purchase of the mill and to provide current operating funds. No formal notes or contracts were executed between the two companies for these advances. The funds were repaid to Bama Cotton Mills when and as funds were available from the operations of the Montgomery mill. No formal partnership agreement was drawn up, but the deeds conveying the mill properties from Evelyn H. Ames to Montgomery Cotton Mills recited the ownership interests in the properties as agreed in preliminary negotiations. The alleged partners were stated to be D. H. Morris, Jr., and Joel E. Johnson, who were each credited with a 30 per cent interest; D. H. Morris, III, who was credited with a 15 per cent interest, and Charles E. Estes and Mabel B. Estes, who were each credited with a 12 1/2 per cent interest. After the property was purchased by the Montgomery Cotton Mills, it was modernized and the machinery converted to the manufacture of different products. D. *258 H. Morris, III, a "technical mill man", supervised the original survey and the modernization and conversion of the mill. Mabel B. Estes furnished neither capital nor services to the partnership. At the time of the purchase neither Joel E. Johnson nor D. H. Morris, III, had met Mrs. Estes, but had done business only with Mr. Estes. Montgomery Cotton Mills operated the cotton mill as a partnership until the death of D. H. Morris, Jr., on November 26, 1943. Charles E. Estes was employed as resident manager at a salary of $4,800 per year. D. H. Morris, Jr., and Joel E. Johnson handled the purchase of raw materials and the sale of finished products from the mill. These three partners only had authority to sign checks for Montgomery Cotton Mills. Mabel B. Estes rendered no services in connection with the partnership operation of the mill. After the dissolution of the partnership of Montgomery Cotton Mills on November 26, 1943, by the death of D. H. Morris, Jr., a new partnership agreement was executed by the remaining owners of the business and the heirs of D. H. Morris, Jr. This arrangement continued until the death of Charles E. Estes on June 6, 1945, when a succeeding partnership *259 was organized by the remaining owners. At all times here material the operation of Montgomery Cotton Mills was financially successful. The operating profits as reported in the partnership returns filed for the taxable years 1941, 1942, and 1943, were distributed as follows: 1941
1942
1943
D. H. Morris, Jr.
$23,808.29
$ 94,322.95
$ 61,299.79
Joel E. Johnson
23,808.29
94,322.95
61,299.79
D. H. Morris, III
11,904.15
47,161.48
30,649.90
Charles E. Estes
14,720.12
44,101.23
29,941.58
Mabel B. Estes
9,920.12
39,301.23
25,541.58
Total
$84,160.97
$319,209.84
$208,732.64 The distributions were in the proportions specified in the conveyance of the properties from the estate of J. F. Ames. The difference between the distributions to Estes and his wife is accounted for by the salary of $4,800 per year paid to Estes, as resident manager of the mill. The income distributed to Mrs. Estes was used by her as she saw fit and was not used to support her family or turned over to Mr. Estes, who continued to support the family as before. There was no real intention of the partners of Montgomery Cotton Mills that Mrs. Estes be an actual bona fide partner *260 in the business at any time during the taxable years here involved. Opinion LEMIRE, Judge: The question here presented for decision is whether, during the taxable years 1941, 1942, and 1943, Mabel B. Estes was a partner, to the extent of 12 1/2 per cent interest, in a partnership doing business as Montgomery Cotton Mills. The respondent has determined that she was not and has taxed her alleged interest in the business to Charles E. Estes. The petitioners contend that the respondent's determination was erroneous and that the partnership interest of Mrs. Estes should be recognized for tax purposes. In , the Supreme Court stated the circumstances under which the validity of a partnership between husband and wife is to be upheld. The Court stated that a wife may become a partner in business with her husband. But her failure to share in the management and control of the business, to contribute vital additional services, or to contribute capital originating with her are all factors which we consider in determining whether the partnership was real within the meaning of the federal revenue laws. When she does none of these things and *261 it appears that there was no intention for her participation to benefit the business, the validity of the family partnership is not to be recognized for federal tax purposes. It is unnecessary for us to determine the validity of Mrs. Estes' alleged partnership interest under Alabama law, since the validity of the partnership arrangement under state law is not determinative of the issue. ; , certiorari denied, . The petitioners do not claim that Mrs. Estes contributed to the management or control of the business or that she otherwise rendered any services whatever. They do contend that she contributed material capital originating with her. The petitioners argue that all the capital of Montgomery Cotton Mills was borrowed capital and represented the independent investment of Mrs. Estes as much as it represented the independent investment of any other partner and that Mrs. Estes' share in the business could in no way be construed as a gift made to her by her husband. However, the evidence is that Mrs. Estes' interest in the business came from her husband alone. *262 Neither of them had the capital or credit to finance the purchase of this business. Mr. Estes had only the option to purchase the business, which he was not able to exercise himself. Since the option was personal to him, Mrs. Estes cannot be considered as having any interest in it. D. H. Morris, Jr., and Joel E. Johnson, through Bama Cotton Mills, furnished the necessary money to organize Montgomery Cotton Mills; D. H. Morris, III, furnished his professional services in the survey and appraisal of the property before formation of the new partnership and in the conversion of its facilities to manufacture a different product; and Charles E. Estes furnished the option to purchase the property at a favorable price, as well as his services. Mabel B. Estes furnished no assets and no services. Mrs. Estes was credited with an interest in the business solely because her husband requested that his interest be credited equally to her and to him rather than to him alone. The other owners had no objection to this arrangement. Thus, Mrs. Estes' interest in the business must be regarded as having been acquired by gift from Mr. Estes. See . No notes or *263 contracts were ever executed by Mrs. Estes, or any of the others, on account of the moneys advanced by Bama Cotton Mills to begin operations. There was an understanding that these funds, as well as any further advances that might be needed, would eventually be repaid by Montgomery Cotton Mills ut of its profits. They were so repaid. This was not capital originating with , affd., , certiorari denied, , was a stronger case for the taxpayer than this case. There the contribution of capital to the business by the taxpayer's wife was money borrowed individually on her note but repaid from the wife's share of profits from the business. We held that that borrowed money did not constitute capital originating with the wife individually and that she was not a partner in the business. The evidence, considered as a whole, will support only a finding that there was no real intention of the partners that Mrs. Estes be an actual partner in the business. There was no need for her as a partner in the business and no benefit to the business from making her a partner. Our ultimate question is *264 - "Did the husband, despite the claimed partnership, actually create the right to receive and enjoy the benefit of the income, so as to make it taxable to him"? We are of the opinion that he did. We conclude that the respondent was correct in taxing the partnership income attributed to Mrs. Estes to her husband, Charles E. Estes, for the years 1941, 1942, and 1943. Decision will be entered for the respondent.